64   87
64   109

## D. M. CLOUGH and Another v. MISSISSIPPI & RUM RIVER BOOM COMPANY.[1]

### February 6, 1896.

### Nos. 9680—(309).

**Boom Fees—Lien—Release.**

 The plaintiffs contracted to sell to C. & Co., and deliver at the limits of defendant's boom a quantity of logs. Plaintiffs delivered the logs at the limits of defendant's boom, but retained the ownership of the marks of record in their own name, as security for the purchase money, which still remains unpaid. The defendant, under its charter, took possession of the logs and drove them to Minneapolis, where it turned out and delivered part of them to the vendees, C. & Co., and extended to them the time of payment of its boom charges, by taking their time notes for the amount, which also remain unpaid. The defendant now claims a lien, paramount to plaintiff's rights, upon the logs having the same marks remaining in its boom, for its boom charges for the logs delivered to C. & Co. *Held*, that the lien was, as to plaintiffs, released by defendant's granting an extension of time to C. & Co., that C. & Co. and plaintiffs' interests in the logs occupied the relation of principal and surety for defendant's boom fees; C. & Co. being the principal debtors, and the logs the surety. Also, that defendant was chargeable with notice, by the records, of plaintiffs' interest in the logs.

Case submitted to the district court for Hennepin county upon an agreed statement of facts, pursuant to G. S. 1894, §§ 6083, 6084. The facts are stated in the opinion. The court, Belden, J., found as conclusions of law that defendant was entitled to enforce a lien paramount to the claim of plaintiffs against the logs of each mark which it had seized and taken possession of, on account of unpaid boomage charges against logs of the same marks delivered to N. P. Clarke & Co. in the year 1894, for which charges the notes mentioned in the opinion were given, and that defendant was entitled to possession of the logs in controversy, and ordered judgment accordingly. From a judgment entered in pursuance of such order in favor of defendant, plaintiffs appealed. Reversed.

*John F. Byers*, for appellants.

*J. B. Atwater*, for respondent.

[1] Reported in 66 N. W. 200.

MITCHELL, J. The question presented by the agreed facts is whether the defendant has a lien, paramount to the claims of the plaintiffs, upon certain logs in its boom, for boom fees for logs having the same marks which were turned out and delivered to N. P. Clarke & Co. in the year 1894.

In February, 1893, plaintiffs contracted with N. P. Clarke & Co. to sell, and deliver in the limits of defendant's boom, 11,000,000 feet of logs, bearing certain marks owned by and recorded in the name of the plaintiffs, for which N. P. Clarke & Co. agreed to pay a specified price per thousand feet, part to be paid when the logs were banked, part when the rear of the drive was in the Mississippi river, part when the rear was in the limits of defendant's boom, and the balance in three equal payments, in 60, 90, and 120 days from the third payment. These log marks remained recorded in the office of the surveyor general of logs and lumber as the property of the plaintiffs, no bill of sale or other written instrument affecting the ownership of these marks or the logs bearing them ever having been filed or recorded. During the driving season of 1893 plaintiffs cut and drove the quantity of logs mentioned in the contract to the boom limits of the defendant, at which place the defendant, acting under its charter, took possession of the logs, and drove them to the city of Minneapolis, at which place the defendant, pursuant to the order of N. P. Clarke & Co., and with the knowledge and assent of the plaintiffs, turned out and delivered to N. P. Clarke & Co. a part of the logs in 1893, and still another part in 1894, the balance still remaining in defendant's boom. The fees and charges of the defendant for the logs turned out and delivered in 1893 were all paid by N. P. Clarke & Co.

The aggregate amount of logs turned out and delivered by defendant to N. P. Clarke & Co. in 1894 was over 60,000,000 feet, of which less than 8,000,000 bore the marks owned by plaintiffs. This aggregate was composed of logs bearing many different marks, and purchased of many different persons by N. P. Clarke & Co. The charge of the defendant was an equal and uniform rate per thousand feet on the entire amount. The manner of doing business between the defendant and N. P. Clarke & Co. during 1894 was as follows: At the end of each month the defendant would render N. P. Clarke & Co. a statement of account of all the logs turned out and deliv-

ered to them during the preceding month, the number of feet of logs of each mark separately, and the total amount of defendant's boom fees, which were all charged to N. P. Clarke & Co. Thereupon N. P. Clarke & Co. would give to defendant their promissory note, payable in three months, for the total amount of such boom charges for the month, and defendant would give to them a receipt, acknowledging the receipt of the note in settlement of the bill. Some of these notes were paid by N. P. Clarke & Co. when they fell due. Others were not paid, but were renewed from time to time, by N. P. Clarke & Co. giving the defendant other similar notes for the amount of the original notes. These renewal notes to the amount of several thousand dollars have never been paid, and are still held by the defendant. It is for the amount of the boom fees represented by these notes for logs turned out in 1894 that defendant now claims a lien on the logs bearing the same marks still remaining in its boom.

N. P. Clarke & Co. never made any payments to plaintiffs on the logs, but, from time to time, as payments became due, executed to plaintiffs their promissory notes therefor, which remain unpaid. N. P. Clarke & Co. being thus in default, plaintiffs, intending to terminate the contract with them, on April 10, 1895, notified the defendant not to turn out any more logs to them. On May 4, 1895, N. P. Clarke & Co., being insolvent, made an assignment of all their property for the benefit of their creditors. On May 15, 1895, the defendant seized a part of the logs which still remained in its boom, claiming a lien thereon for its boom charges for logs, bearing the same mark, turned out to N. P. Clarke & Co. in 1894. Until this seizure plaintiffs had no knowledge that these boom charges had not been paid by N. P. Clarke & Co.

The provision of its charter under which the defendant more particularly bases its right to a lien is as follows: "Said corporation shall have a lien and property in all such logs or other timber, so far as to enable it to take, scale, and retain a sufficient number or quantity of said logs or other timber to pay the boomage and charges due on the same, and also all charges due on logs or timber of the same mark that may have been previously delivered." Sp. Laws 1867, c. 134, § 12. Much of the briefs of counsel is devoted to the discussion of the construction of the provisions of defendant's

charter, and of the nature and extent of the right of lien given thereby. We do not find it necessary to consider any of these questions, for the reason that, under the view we take of the case, the logs in question were released from defendant's lien (assuming it would otherwise have had one) by its granting to N. P. Clarke & Co. an extension of time for the payment of its fees and charges.

The log marks remained the property of plaintiffs, no bill of sale or other written instrument affecting the ownership of the marks or the logs having been recorded in the office of the surveyor general of logs and lumber of that district. The plaintiffs held the title to the logs as security for the payment of the purchase money. The defendant was chargeable with notice of plaintiffs' rights, because the public records showed that they continued owners of the marks. N. P. Clarke & Co. were the principal debtors, and plaintiffs' property in the logs was, at most, merely security for the debt. The relation of principal and surety may exist between a person and property, as well as between two persons. The case is one where the principle applies that giving time to the principal discharges the surety. By giving time to N. P. Clarke & Co. (the principal debtor), the defendant released plaintiffs' property in the logs (the surety).

We do not mean to be understood as holding that defendant would have released its lien merely by failing to insist on payment of its charges before delivering the logs, or even by deferring to present its bills for payment for such time as would be reasonably necessary, or customary, according to the usual mode of conducting such a business; as, for example, once a week, or once a month. That is not this case. Here the defendant, when it presented its bill at the end of each month, accepted N. P. Clarke & Co.'s note for the amount, payable in three months, and thereafter renewed these notes from time to time. The cases cited by defendant's counsel, holding that, by delivering part of a consignment of goods to the consignee, a common carrier does not, as against the unpaid vendor or consignor, release his lien on the remainder of the consignment for his entire charges, are not in point. If the carrier should grant an extension of time to the consignee by taking his time note for the charges, that case might be somewhat analogous to the present one. If the defendant had not given N. P. Clarke & Co. any ex-

tension of time, but had merely delivered part of the logs without demanding prepayment of its charges, the cases cited would be in point.

Judgment reversed, and cause remanded, with directions to enter judgment for the plaintiffs.